**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KAREN DONATELLI,<br><br>3031 Gates Road NW,<br>Washington DC, 20008<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL BANK N.A.,<br><br>2275 Research Blvd., Suite 600<br>Rockville, Maryland 20850,<br><br>Defendant. | Case No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
ACTION INVOLVING REAL PROPERTY
(3031 Gates Road NW, Washington DC, 20008)**

Plaintiff Karen Donatelli, through undersigned counsel, states and alleges:

**INTRODUCTION**

1. In April 2023, Karen Donatelli's husband forged her signature to secure a $5 million loan from Capital Bank; as a result, Capital Bank placed a lien on the Donatelli family home at 3031 Gates Road NW, Washington DC, 20008 ("Gates Road Property"). That lien is void, and Ms. Donatelli seeks this Court's aid in lifting it.

2. While separated from her husband[1] in 2024, Ms. Donatelli learned about the lien and obtained copies of the paperwork that contained forgeries of her signature. In a letter dated October 24, 2024, Ms. Donatelli notified Capital Bank that the signatures on the mortgage paperwork that claimed to be hers were not, and that its security interest was therefore void ab initio by forgery.

3. In the several months that followed, Capital Bank effectively ignored this notice. It provided no substantive response to Ms. Donatelli's concerns and refused to engage in meaningful negotiations with her counsel to resolve this matter.

4. On March 10, 2025, Ms. Donatelli received a demand letter from Capital Bank's counsel, accusing her and her spouse of being in default on their mortgage, i.e., the mortgage that Ms. Donatelli had advised Capital Bank months ago to be fraudulent. The demand letter did not even acknowledge, let alone respond, to Ms. Donatelli's October 24, 2024 letter. Instead, Capital Bank demanded accelerated payment of the balance—approximately $3 million—in full and immediately, even though Capital Bank has been on notice for several months that that mortgage is void ab initio.

5. Ms. Donatelli respectfully asks this Court to declare Capital Bank's security interest in her home void ab initio based on her husband's forgery, remove the cloud its lien has placed on the title to the property, and permanently enjoin Capital Bank from asserting title to the Gates Road Property.

---

[1] On or about February 28, 2025, Ms. Donatelli filed a complaint for uncontested divorce in D.C. Superior Court; because that divorce action is pending at the time of this filing, this Complaint refers to Mr. Donatelli throughout as her husband (rather than her ex-husband).

## JURISDICTION AND VENUE

6. The Court has jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1332, because Ms. Donatelli is a citizen of the District of Columbia; Capital Bank is a citizen of Maryland, and the amount in controversy in this matter exceeds $75,000.

7. The Court has jurisdiction over the Defendant pursuant to D.C. Code § 13-423.

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to Ms. Donatelli's complaint occurred within this District, and the real property that is the subject of the action, i.e., 3031 Gates Road NW, is located in this District.

## PARTIES

9. Plaintiff Karen Donatelli resides in the District of Columbia at 3031 Gates Road NW.

10. Defendant Capital Bank N.A. is headquartered in Rockville, Maryland. On or about April 13, 2023, Capital Bank issued a $5 million loan to DD-MCC LLC, an entity located in the District of Columbia that is owned by Chris Donatelli, Ms. Donatelli's spouse.[2] As a result of this transaction, Capital Bank placed a lien on the Gates Road Property with the D.C. Recorder of Deeds.

## FACTS

**Karen Donatelli Marries—and Separates from—Chris Donatelli**

11. Ms. Donatelli married Chris Donatelli on July 29, 1995.

---

[2] As discussed in more detail below, Mr. Donatelli has not been living at the Gates Road Property for approximately a year; upon information and belief, he is currently residing elsewhere in the District of Columbia.

12. Chris Donatelli is a wealthy and highly successful real estate developer. The Donatellis agreed that it was in the best interest of the family for Ms. Donatelli to leave the workforce and assume full domestic responsibilities for the household and the children.

13. In or around 2007, Mr. and Ms. Donatelli purchased the Gates Road Property and moved in there with their children.

14. By early 2024, the parties' marriage had deteriorated to the brink of collapse. Mr. Donatelli last lived together with Ms. Donatelli at the Gates Road Property in early Spring 2024, at the latest. Ms. Donatelli hired a family lawyer and obtained a final Civil Protection Order against Mr. Donatelli that remains in effect through August 30, 2026.

15. On or about February 28, 2025, Ms. Donatelli filed a complaint for uncontested divorce in D.C. Superior Court, which remains pending.

**Ms. Donatelli Learns That Mr. Donatelli Forged Her Signature to Obtain a $5 Million Loan from Capital Bank—Effectively Placing a Second Mortgage on Her Home**

16. While separated from her husband in 2024, Ms. Donatelli learned that Capital Bank had placed a lien on her home. She obtained the supporting paperwork for that lien and realized someone had signed her name for her—three times—without her consent.

17. According to the paperwork that Ms. Donatelli obtained, on or about April 12, 2023, Westcor Title Insurance Company ("Westcor") transmitted, through its counsel, what it purported to be a packet of valid closing documents for a loan from Capital Bank to DD-MCC LLC, an entity owned by Mr. Donatelli. Those

documents appeared to grant Capital Bank a security interest on the Gates Road Property. *See* Exhibit 1.

18. The packet transmitted by Westcor included three documents with Ms. Donatelli's signature, all dated April 12 or April 13, 2023:

    a. Page 23 of the Deed of Trust and Security Agreement (Exhibit 1 at 46);

    b. A Hazardous Waste and Toxic Substances Indemnification form (Exhibit 1 at 55); and

    c. A W-9 Request for Taxpayer Identification Number and Certification form (Exhibit 1 at 57).

19. Ms. Donatelli did not sign these documents. She did not authorize anyone to sign these documents on her behalf.

20. The documents contained the signatures of two notaries. One was directly employed by Mr. Donatelli; the other worked for Benjamin Soto, a friend of Mr. Donatelli.

    a. Stephen Harrison, the individual who had notarized Ms. Donatelli's signature on the deed of trust, was an employee of Mr. Donatelli's company.

    b. Tara Cestero, a notary from Premium Title and Escrow LLC ("Premium Title"), executed the sworn "Identification Affidavit" certifying that both Donatellis had "executed loan documents" and that both had "signed all papers in this loan package." Exhibit 1 at 7. Premium Title was listed as Westcor's agent in the documents; Premium Title is owned by Mr. Soto, who, again, is a friend of Mr. Donatelli.

Both of these notaries would have had financial incentive to attest that Ms. Donatelli had executed these documents, when in fact, she had not.

21. Ms. Donatelli confronted Mr. Donatelli immediately thereafter about what she had discovered. Mr. Donatelli initially denied that he had forged her signature; only after Ms. Donatelli had repeatedly pressed him for explanation multiple times did he admit in a telephone conversation that he had forged her signature.

22. Upon information and belief, Mr. Donatelli also admitted to multiple third parties that he had forged her signature on the paperwork, including:

    a. His brother Doug Donatelli, who told Mr. Donatelli that Ms. Donatelli was accusing him of forging her signature, to which Mr. Donatelli replied that he had done so because Ms. Donatelli would never have agreed to sign; and

    b. Ms. Donatelli's brother, William Kappaz, who also confronted Mr. Donatelli with his sister's accusations, and to whom Mr. Donatelli likewise admitted that he had forged Ms. Donatelli's signature.

23. Jennifer Naso, a handwriting expert engaged by Ms. Donatelli's counsel, examined the three signatures referenced in Paragraph 17, and compared them to Ms. Donatelli's authentic signatures. She observed "numerous structural and significant dissimilarities present," and concluded that it was probable that those three signatures were not Ms. Donatelli's. Exhibit 2 at 4-6.

24. On or about October 24, 2024, Ms. Donatelli, through her counsel, sent a letter to Capital Bank notifying Capital Bank that her signature had been forged and that

its lien on the Gates Road Property was void ab initio. Ms. Donatelli asked Capital Bank to release the lien to avoid litigation.

25. Capital Bank promptly confirmed receipt of Ms. Donatelli's letter—but took no meaningful action on it in the months that followed. It did not release the lien, nor did it engage in any meaningful negotiations to resolve Ms. Donatelli's concerns. Capital Bank simply took no position on the substance of Ms. Donatelli's letter.

26. Instead, on or about March 10, 2025—over four months after her written notice to Capital Bank that her signatures had been forged and the lien was void ab initio—Capital Bank sent Ms. Donatelli and her counsel a demand letter. This letter (1) claimed that the mortgage was in default and (2) demanded immediate payment of the entire outstanding balance, which, according to the letter, is over $3 million. This letter did not acknowledge, let alone respond to, either Ms. Donatelli's notice or any of the ample supporting evidence she proffered that Capital Bank's mortgage on her home is fraudulent.

## CAUSES OF ACTION

### COUNT ONE
### (Declaratory Judgment, 28 U.S.C. § 2201)

27. Plaintiff repeats and realleges each allegation set forth in Paragraphs 1 through 26 of this Complaint.

28. There is an actual controversy regarding a justiciable issue between Plaintiff and Defendant about whether Defendant's lien on her property is void ab initio by forgery and must be released. It is necessary for this Court to resolve the issue.

## COUNT TWO
### (Quiet Title)

29. Plaintiff repeats and realleges each allegation set forth in Paragraphs 1 through 28 of this Complaint, and further states:

30. Defendant recorded or caused to be recorded a Deed of Trust lien against Plaintiff's property, i.e., the Gates Road Property, in the amount of $5 million.

31. Ms. Donatelli's signature on that Deed of Trust was forged; accordingly, the lien is void.

32. Despite demand, Defendant has failed to release the lien, causing cloud on the title to the Gates Road Property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Karen Donatelli respectfully requests that the Court render a judgment on her behalf and against Defendant, and:

a. That Capital Bank's lien on 3031 Gates Road NW be declared null and void and of no further force and effect;

b. That Capital Bank be permanently enjoined from asserting title to the Gates Road Property; and

c. That Plaintiff be awarded her costs and expenses incurred in this action; as well as such other and further relief as the Court deems just and proper.

DATE:  March 11, 2025                              /s/
                                            Amelia J. Schmidt (DC Bar No. 1012380)
                                            Matt Kaiser (DC Bar No. 486272)
                                            Kaiser PLLC
                                            1099 14th Street NW, 8th Floor West
                                            Washington, DC 20005
                                            (202) 640-2850
                                            aschmidt@kaiserlaw.com
                                            mkaiser@kaiserlaw.com

                                            *Counsel for Karen Donatelli*